## Cowden *versus* Oyster.

*Land conveyed to husband, before Act of 1848, for legacy or distributive share of wife, when not held in trust for her.—Parol proof of trust.*

1. Where, by will, proved in 1811, a testator directed that his real estate be divided into two parts and valued, and then devised the purparts to his two sons at the valuation, but if not accepted at the valuation, directed a sale, and that in either event the proceeds should be divided among his five children: and on acceptance by one son of his purpart a portion thereof was conveyed to the husband of one of the daughters for her share of the valuation: in an ejectment by her, after the death of her husband, against the vendee of a purchaser of the land at sheriff's sale as the property of the husband, it was *Held*, That as the share of the wife, whether a legacy or a debt, was exclusively within the dominion of the husband, she could not elect to take it as land, nor could her husband be regarded as her trustee of the land conveyed to him.

2. Loose declarations of the husband that the land was his wife's, not made at the time of the conveyance, are insufficient to establish a trust in him for her.

3. Hence, where there was no evidence of any act or declaration of the husband at the time the deed was made to him tending to show that the wife had any title to the land, nor of any subsequent declaration that he did not intend by taking the deed in his own name to acquire for himself ownership of the land, there was no evidence of a trust to submit to the jury, and it was not error to instruct them to find for the defendant.

ERROR to the Common Pleas of *Cumberland county.*

This was an action of ejectment by Eve Cowden, widow of Francis Cowden, against George Oyster, for eighty-four acres of land, with notice of claim for mesne profits.

The land in dispute was the property of Adam Kreitzer, who by his last will and testament directed that as soon as his youngest son arrived at the age of twenty-one years his real estate should be valued by a jury of twelve men, and his plantation and mill divided into two parts, his two sons, John and Andrew, to take said property at the valuation, if they thought proper, and if they

[Cowden v. Oyster.]

refused to take at the valuation, then the executors were directed to sell the same either at private or public sale, and the proceeds were to be equally divided among his five children, to wit: his three daughters, Barbara, Eve, and Rosanna, and his two sons, John and Andrew, share and share alike. The testator first gave to his wife the one-third of the income of his estate during her widowhood.

Testator's real estate was afterwards valued and divided into two parts, as directed by his will, which was proved the 9th April 1811, and his son Andrew elected to take purpart B., containing one hundred and sixty-nine acres and thirty-seven perches, subject to the widow's third, which was valued at $8716.75. Testator's daughter Eve was married to Francis Cowden, and on the 21st October 1820, Andrew Kreitzer conveyed to her husband, Francis Cowden, eighty-four acres and one hundred perches of the one hundred and sixty-nine acres and thirty-seven perches, which he had elected to take under his father's will, subject to the proportion of the widow's third charged upon it. The consideration mentioned in this deed was $4358.37.

Afterwards, on the 14th September 1824, Samuel Prowell obtained a judgment against Francis Cowden for $200. On this judgment a *fi. fa.* issued, the land conveyed by Andrew Kreitzer to Cowden was levied and condemned, and a *venditioni exponas* issued, on which it was sold to Abraham Oyster by the sheriff, on the 15th August 1825, for $890, and the sheriff's deed for the same acknowledged the 14th September 1825. Abraham Oyster, the sheriff's vendee, conveyed the land thus purchased to his son, George Oyster, the present defendant, by deed dated 3d February 1855. The consideration mentioned in this deed is $7000, but it appeared from the evidence of David Oyster that George Oyster paid his father but $2000 of the $7000 mentioned in the deed: the balance of $5000 was given him by his father as an advancement.

To avoid the effect of the sales and conveyances recited, Mrs. Cowden alleged that the deed from Andrew Kreitzer to her husband, Francis Cowden, although absolute on its face, was in trust for her, and so designed and intended by the parties; that no money was paid by her husband to Andrew Kreitzer, but that the land was taken in lieu of the moneyed legacy under her father's will, of one-fifth part of the value of his estate; that she elected to take and did take land in lieu of money, and that Abraham Oyster purchased at sheriff's sale, and George Oyster purchased from his father, Abraham Oyster, with notice and knowledge that Mrs. Cowden claimed the land in controversy. Francis Cowden died December 26th 1861.

The court below (GRAHAM, P. J.) instructed the jury as follows:—

14 WR.—24

[Cowden *v.* Oyster.]

" We presume the evidence is sufficient to satisfy you that the consideration mentioned in the deed to Francis Cowden was not paid in money by him to Andrew Kreitzer; it is just one-half of the valuation of that part of the real estate taken by Andrew Kreitzer, and the circumstances of Francis Cowden almost preclude the possibility that he could have paid in money the consideration mentioned in the deed. And it is difficult to imagine why he should do so when Andrew Kreitzer owed him, under the then existing laws, a moneyed legacy in right of his wife, which is alleged by plaintiff to have been just the amount of the consideration mentioned in the deed from Kreitzer to Cowden. Under the will of her father, Mrs. Cowden had not the privilege to elect to take land in place of money. If the sons elected to take the land they were to pay the daughters money; if they refused, then the land was to be sold by the executors, and the proceeds divided between sons and daughters. The husband of Mrs. Cowden certainly might have agreed that his wife should receive land from Andrew Kreitzer in place of the money due her on that part of the real estate taken by Andrew, or he might have agreed and directed that the moneyed legacy should be settled to the separate use of his wife, and no one could interfere to prevent her taking land or money to her own use under the direction of her husband. And if the deed had been made to Mrs. Cowden, and not to her husband, this case would be clear of all difficulty, and the plaintiff would be entitled to your verdict. Or if the evidence clearly established the fact that when Kreitzer made the deed to Cowden it was in trust for Mrs. Cowden, and her husband agreed to hold the land as trustee, and for the use and benefit of his wife, and if the Oysters had notice or knowledge of this when they respectively purchased, then the plaintiff could recover. But to establish a trust by parol the evidence must be clear, consistent, uncontradicted, and satisfactory. But this is not the character of the evidence adduced in this case to establish the alleged trust.

" The principal witness relied on to establish the alleged trust is Mrs. Mary Kreitzer, widow of John Kreitzer, the brother of Andrew Kreitzer. She says that Mrs. Cowden made choice of her share by taking land; that witness was present when she got her deed from Andrew Kreitzer, and she did not pay any money. That she thinks Mrs. Cowden's husband was not present at the time Mrs. Cowden got the deed. That Andrew said the deed was made to Mrs. Cowden. Mrs. Kreitzer further says the deed was made to Mrs. Cowden; but the deed is not to her, but her husband. She also says that Andrew Kreitzer said it would have been a great deal better that Mrs. Cowden had kept the deed to herself, and not have let Cowden had any share of it; that it would have been better if his sister had kept the deed all in her own name; that there might be difficulty because Cowden might

[Cowden v. Oyster.]

spend it. These declarations of Andrew Kreitzer are entirely inconsistent with the alleged fact that the land was conveyed to the husband in trust for his wife. Nor are the declarations of Cowden afterwards that the land was his wife's, in the face of the deed put upon record, and when he may have been encumbered with debt, sufficient to establish a trust in favour of his wife.

" We therefore say to you, that the evidence having failed to show that the husband took a conveyance of the land in trust for his wife, the plaintiff cannot recover, and you will find for the defendant.

" But there is another feature in this case which would defeat a recovery by the plaintiff. George Oyster is a purchaser for a valuable consideration, without notice of the alleged trust. The conversation between David and George Oyster about the Cowden claim, and which is the only evidence of notice to George, is not such notice as the law requires of an outstanding secret title in a third party. David Oyster is a stranger, having no interest in the Cowden claim. It is not alleged that he was authorized by any one interested in the Cowden title to give notice for them. It was the casual conversation of a stranger having no interest in the subject, and this is not such notice as the law requires to affect a purchaser for value. Nor is the position assumed by the plaintiff's counsel tenable, that the consideration paid being a moneyed legacy bequeathed to the wife, the law raised a resulting trust in her favour when land in place of money was taken by the husband. It, I presume, would not be contended that, as the law then was, if Andrew Kreitzer had paid to the executors of his father the amount charged upon his land, and the executors had paid it over to Cowden, and he had purchased this land with the money received, and taken a deed in his own name, that the law would have raised a trust in favour of Mrs. Cowden. The legacy was payable to the husband, and his wife could not receive it without the husband's consent; and if he invested or converted the money which he alone could receive into land, the law would not raise a trust in favour of his wife.

" The case of Kauffman v. Crawford, 9 W. & S. 131, relied upon by plaintiff's counsel, is very different from the present. In that case the guardians purchased and took a deed in trust for their wards, and afterwards conveyed to the husbands of their wards, and the court held that the estate, by the trust-deeds, vested in the wards; that there was no beneficial interest left in the guardians to convey, and their deeds vested in the husbands nothing but the dry legal title.

" Nor does the case of Hannah v. Swarner, 3 W. & S. 230, sustain the position assumed by plaintiff's counsel. In that case the legatees by their agreement elected to take land in place of money, and in the agreement John Hannah, the husband, agreed

[Cowden *v.* Oyster.]

' that it should be the land of his wife.' By this act of the husband the court held that a fee vested in the wife, and a deed executed afterwards by the executors to the husband could not affect it. But they say ' it cannot be doubted that the husband, by whose act the money is reconverted into land, may, by an express determination on his part, avoid any legal consequences by considering the fund so reconverted as his own property, as, for example, by taking a deed of conveyance of the property to himself, or by evincing his intention by some other unequivocal act or declaration.' In the present case the deed was to the husband. He placed it on record, and obtained credit thereby, and even if the purchaser at sheriff's sale had notice of a trust the plaintiff has failed to establish it. This view of the case renders it unnecessary to answer the points presented by the counsel of the parties, for, as we before said, it will be your duty to render a verdict for the defendant."

There was a verdict and judgment accordingly. Whereupon the plaintiff sued out this writ, averring here that the court erred in withdrawing the whole case from the jury, and instructing them, " that the evidence having failed to show that the husband took a conveyance of the land in trust for his wife, the plaintiff cannot recover, and you will find for the defendant," and that " George Oyster is a purchaser for a valuable consideration without notice of the alleged trust."

*F. Watts, W. H. Miller,* and *H. Newsham,* for plaintiff in error.

*Hepburn & Penrose,* for defendant in error.

The opinion of the court was delivered, June 29th 1865, by

STRONG, J.—Whether the land in controversy was held by Francis Cowden in trust for his wife or not, must be determined from his acts and declarations at the time when the conveyance was made to him. If there was no trust then, none was created by anything that was said or done subsequently. There is, however, no evidence that on the 21st day of October 1820, when Andrew Kreitzer made the deed to Francis Cowden, or at any time prior thereto, Cowden agreed to hold the land in trust for his wife. No written declaration to that effect was made, and no verbal acknowledgment of a trust is proved. It is true a single witness testifies that she " often heard Cowden say it was his wife's land, not his ;" but she does not prove that he said so when the title was made to him ; and, for aught that appears, these declarations were made after his creditors had obtained liens on the land, and even after it had been sold for the payment of his debts. Such evidence is utterly inadequate to prove a trust. The deed

[Cowden v. Oyster.]

having been taken in his own name, the legal presumption is that the use belonged to him, and though it was competent to show by parol evidence that the beneficial interest was in another than the grantee of the legal title, that evidence must be clear and explicit. It is not the legal conveyance or the transfer of it that creates the trust, but the declaration of it, except in the case of resulting trusts, or such as the law implies from the transaction. And hence the evidence that the grantee holds in trust should be as certain and as satisfactory as that which is required to prove the transmission of a title. Parol trusts, in opposition to legal titles, are not favoured. Such being the undoubted rule in equity, it is manifest that loose declarations of the holder of a legal title that the property belongs to his wife or child, declarations that have no necessary reference to the mode of acquisition, cannot be permitted to overthrow the presumption arising from an absolute conveyance. If they can, legal titles are most unsafe.

We do not, however, understand the plaintiff to contend that any declarations of Francis Cowden show him to have been a trustee for his wife, independent of the fact that the purchase-money of the land was a debt due from Andrew Kreitzer to the wife. The argument is that she elected to take, as land, a legacy given to her by her father out of the proceeds of land, and that the conveyance to her husband was therefore in trust for her; that the husband never made her chose in action his own by reducing it into possession, and that for this reason a trust resulted to her from the purchase with her legacy. This position is entirely untenable. By the will of her father, his lands were directed to be divided into two parts and valued. They were then devised to his two sons at the valuation if they accepted the devise, and only in case they did not accept, was the land directed to be sold. The amount of the valuation, or the proceeds of sale in the event of non-acceptance, were directed to be divided among all his children, of whom the plaintiff was one. The lands were divided and appraised. They were accepted by the sons at the valuations, and deeds were made to them by the executor of the will. The sons were not executors. It was not therefore their duty to pay the legacies as such. But having taken the land at the valuation, they became debtors, and assumed to pay proportionate parts of the valuation bequeathed to their sisters. It is immaterial, however, whether the sum due by Andrew Kreitzer to his sister, Mrs. Cowden, be regarded as a legacy or a debt. Whether one or the other, she had no dominion over it. She could not release it or lawfully receive it, and certainly it was not in her power to agree to take land instead of money. The entire dominion over the debt or the legacy was in her husband. He only could elect to receive land instead of money. It is, then, a mistake to argue, as has been argued in this case, that the legal title to the wife's

land was made to the husband. She had no ownership of the land, either legal or equitable, when Andrew Kreitzer made his deed to Cowden. To contend that she had, is to assume that her dominion over her chose in action continued, notwithstanding her coverture, which certainly was not the law, in this state, before 1848. Doubtless Francis Cowden might have refused or neglected to assert his marital rights over her chose, or he might have collected the debt or legacy with no intention to make it his own. He might have constituted himself a trustee for her, either of the money or of the land, if he chose to take it in lieu of money; but the evidence of this, if found anywhere, must be in what took place at the time when he asserted his dominion. If he then took the title to himself, his wife's right was extinguished, and neither the chose nor its product was any longer hers. Nothing less than a subsequent gift or a grant could revest her with any right. Now, if, as has been assumed all through this case, and as is doubtless true, the consideration of the deed from Andrew Kreitzer to Francis Cowden was the sum due from Kreitzer to Mrs. Cowden, and if that conveyance discharged the debt or paid the legacy, the title of the husband was substituted for that of the wife; and such a substitution is a complete reduction into possession of a wife's right in action. In no possible way could a husband more plainly manifest his determination to make his own a chose in action of his wife, than by taking a deed or conveyance of land in satisfaction of it to himself. In Hannah *v.* Swarner, 3 W. & S. 223, this very case was put by Judge Rogers as an express determination to avoid any remaining right of a wife. It was said, indeed, in Johnson *v.* Johnson's Administrator, 7 Casey 450, that " it was not intended to deny that declarations made at the time of receiving the wife's money or choses in action, or afterwards, but clearly evincive of the intent at the moment of reduction to possession, may not repel the presumption of personal acquisition by the husband and establish the relation of trustee for the wife." But it was added that, in the language of Gibson, C. J., "they must be deliberate, positive, precise, clear, and consistent with each other," and that " the disclaimer of conversion by the husband to his own use of his wife's money must be clearly proved, either by acts or declarations, at the time, or by subsequent admissions which leave no doubt of the intent at the time." In this case there is not a shadow of any evidence of any act or declaration of Francis Cowden, at the time the deed was made to him, tending to show that his wife had any title to the land, nor of any subsequent declaration that he did not intend, by taking the deed in his own name, to acquire for himself ownership of the land. There was, therefore, no evidence of a trust which should have been submitted to the jury.

[Cowden v. Oyster.].

There is nothing in any of the cases cited by the plaintiff that sustains her. In Hannah v. Swarner there was an express agreement by the husband before the land was taken in lieu of the legacy that it should be the land of his wife. In Beal v. Stehley, 9 Harris 376, there was no conveyance to the husband. At most, there was an implied election that his wife should take land instead of a pecuniary legacy, but nothing was done to extinguish her right. Lynch v. Cox, 11 Harris 265, was an ordinary case of a resulting trust arising from the payment of the purchase-money by one, while the deed was made to another. It has no application to a question between a husband and wife. Davis v. Davis, 10 Wright 342, was a case where the husband had given a power of attorney to collect a legacy to his wife, and pay the proceeds to her sole and separate use. The attorney took land for the legacy in his own name. It was of course held the equitable title was in the wife. The husband had done nothing to assert his marital rights until after the ownership of the land had vested in the wife.

We hold, therefore, the evidence entirely failed to show that Francis Cowden took a conveyance of the land in controversy in trust for his wife, and that the court was right in directing a verdict for the defendant. Of course the question whether the defendant was a purchaser for a valuable consideration, without notice of a trust, does not arise.

The judgment is affirmed.

WOODWARD, C. J., and THOMPSON, J., dissented.